1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUMP SAN DIEGO, LLC,<br><br><div align="right">Plaintiff,</div><br>v.<br><br>JANAY KRUGER, as an individual, and KRUGER DEVELOPMENT COMPANY, a California Corporation,<br><br><div align="right">Defendants.</div> | Case No.:  3:14-cv-1533-CAB-(BLM)<br><br>**ORDER ON MOTION TO DISMISS [Doc. No. 25]** |

This matter comes before the Court on Defendants Janay Kruger and Kruger Development Company's (collectively "Defendants") motion to dismiss [Doc No. 25.] The motions have been fully briefed, and the Court finds them suitable for submission without oral arguments.  For the following reasons, Defendants' motion is **DENIED**.

## I.  Procedural Background

On June 25, 2014, Plaintiff filed a complaint against Defendants asserting three claims: (1) negligence; (2) negligent Misrepresentation; and (3) breach of contract.  [Doc. No. 1.]  Defendants moved to dismiss the complaint in its entirety.  [Doc. Nos. 4, 6.]  The Court granted the motions, primarily on statute of limitations grounds.  [Doc. No. 10.]

On appeal, the Court of Appeals reversed and remanded, stating that Plaintiff should be allowed an opportunity to file an amended complaint because it was not certain that Plaintiff "could prove no set of facts that would establish the timeliness of the claim[s]." [Doc. No. 16.]

On January 10, 2017, Plaintiff filed its first amended complaint ("FAC") asserting a claim of negligence and a claim of breach of contract.  [Doc. No. 22.]  On January 24, 2017, Defendants filed their motion seeking to dismiss under the Federal Rules of Civil Procedure.  [Doc. No. 25.]  Plaintiff filed its opposition to the motion [Doc. No. 26] and Defendants filed their reply [Doc. No. 27].

## II.    The Allegations in the FAC

In March 2011, Plaintiff retained Defendants to provide land-use consulting advice concerning the appropriateness of a San Diego property (the "Property") for an indoor trampoline business.  The complaint alleges "Defendants advised Plaintiff that the Property was properly zoned for Plaintiff's business.  Defendants confirmed this advice in writing on or about December 16, 2011."  [Doc. No. 22 at ¶ 14.]

On January 13, 2012, Plaintiff executed a ten-year lease on the Property that required a security deposit of approximately $77,000.  [*Id.* at ¶ 15.]  After executing the lease, Plaintiff was informed that the Property "was actually not properly zoned for Plaintiff's business."  [*Id.* at ¶ 16.]  Thereafter, Plaintiff was informed that a Conditional Use Permit ("CUP") "may be required" and that "Plaintiff may not be required to pay any additional costs related to zoning variance over and above what Plaintiff anticipated to pay in construction and development costs."  [*Id.* at ¶ 17.]  Plaintiff was "informed that deposits Plaintiff made in connection with the [CUP] application would be similar to fees required by the City of San Diego in any event to construct the contemplated improvements," but "was not aware that the Defendants' land-use advice had caused Plaintiff any damage."  [*Id.*]

Plaintiff filed its CUP application on July 2, 2012.  [*Id.* at ¶ 18.]  After July 2, 2012, Plaintiff was required to pay the costs associated with the attorneys and consultants needed

to prepare draft permit findings, attend meetings with City staffers and go through the CUP hearing process with the Planning Commission.  [*Id.* at ¶ 20.]

In the Fall of 2012, Plaintiff received a cycles report from the City, but prior to obtaining this report Plaintiff could not calculate whether it had been damaged by Defendants' erroneous advice "[b]ecause of Plaintiff's substantial planned investment into the Property."  [*Id.* at 21.]  After receiving the cycles report from the City "it became apparent that Plaintiff would be forced to incur significant construction and development costs above and beyond the improvements it already intended to undertake."  [*Id.*]

Plaintiff also alleges that it would not have executed the lease but for Defendants' consulting advice.  [*Id.* at 23.]  Plaintiff's business was delayed in opening because of Defendants erroneous advice and if not for the delay resulting from the CUP process, "Plaintiff could have been the first-to-market indoor trampoline business . . . would have not lost significant revenue . . . [or] incurred additional construction costs and post-CUP application fees in excess of $300,000.  [*Id.*]

Based on these allegations, Plaintiff asserted negligence and breach of contract claims against Defendants.

## III.   Legal Standard

Under Rule 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008).  But, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555).

3:14-cv-1533-CAB-(BLM)

1
2
3
4
5
6

"When ruling on a motion to dismiss, [the court] may 'generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'"  *Outdoor Media Grp., Inc. v. City of Beaumont,* 506 F.3d 895, 899 (9th Cir. 2007) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)).  Matters of public record are properly subject to judicial notice.  *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) (citation omitted); *see also* Fed. R. Evid. 201.

7

## IV.  Defendants' Request for Judicial Notice

8
9
10
11
12
13

Defendants request that the Court take judicial notice of three documents: (1) a certified copy of a CUP application signed on June 19, 2012 and filed by Plaintiff with the City of San Diego Development Services Department; (2) a certified copy of a City of San Diego invoice dated May 17, 2012, for "Multi Prelim" and reflecting payment by Plaintiff; and (3) a certified copy of a City of San Diego invoice dated June 20, 2012, for "CUP" and reflecting payment by Plaintiff.  [Doc. No. 25-2.]

14
15
16
17
18
19
20

Defendants argue that the three documents are judicially noticeable as public record and are available through a public records request to the City of San Diego Office of the City Clerk.  Defendants assert that the Exhibits 1-3 are copies of documents that were previously submitted to this Court as part of their earlier requests for judicial notice and have been resubmitted here out of an abundance of caution.  [Doc. Nos. 6-1, 8-1.]  The Court granted the prior request for judicial notice covering the same matters.  [Doc. No. 10 at 3-4.[1]]  Plaintiff does not dispute that the documents are public records.

21
22
23
24
25
26

Accordingly, the Court takes judicial notice of the following facts, which are matters of public record not subject to reasonable dispute or disputed by Plaintiff: (1) on June 19, 2012 , Plaintiff applied for a CUP for the Property and that the project number listed on the application is 286180; (2) on May 17, 2012, Plaintiff made a $5,000 payment to the City of San Diego Development Services office related to project number 282339; and (3) on

27
28

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

4

June 20, 2012, Plaintiff made a $8,618 payment to the City of San Diego Development Services office related to project number 286180.

## V.   Discussion

Defendants assert two arguments in support of dismissal of the negligence and breach of contract claims.  First, Defendants contends that the claims are time-barred by the applicable statute of limitations.  Second, Defendants assert that the claims contain substantive flaws in that they do not allege the requisite facts necessary to state either claim.

### A.  Statute of Limitations

Defendants first argue that Plaintiff's breach of contract and negligence claims are time-barred under California Civil Code sections 335.1, 339.[2]  Plaintiff's counter that the doctrine of law of the case and issue preclusion preclude Defendants' statute of limitation argument and, in the alternative, Plaintiff's FAC alleges sufficient additional facts showing the it was not aware that it was damaged until the Fall of 2012.

"For the sake of efficiency and consistency, a decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case…. [f]or the law of the case doctrine to apply, we must have actually have decided the matter, explicitly or by necessary implication, in our previous disposition."  *Snow-Erlin v. U.S.*, 470 F.3d 804, 807 (2006) (internal quotations and citations omitted).

In the case at bar, the Court of Appeals focused on whether the record before it "conclusively establish[ed] when Jump first sustained damages" to warrant dismissing the complaint without affording Plaintiff leave to amend.  [Doc. No. 16 at 4.] The Ninth Circuit

_____

[2] Section 335.1 sets a two year statute of limitations for "an action for assault, battery, or injury to, or for death of, individual caused by wrongful act or neglect, is two years."  CAL. CIV. PROC. CODE § 335.1.  It is applicable to personal injury actions.  *Buschman v. Anesthesia Bus. Consultants LLC,* 42 F. Supp. 2d 1244, 1253 n. 7 (N.D. Cal. 2014); *cf. Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 956 (9th Cir. 2011) ( "In California, personal injury claims that accrued after January 1, 2003, are subject to a two-year statute of limitations.").
Similarly, Section 339 set a two year statute of limitations for "an action upon a contract, obligation or liability not founded upon an instrument of writing . . ."  CAL. CIV. PROC. CODE § 339.

found that it could not "conclude at this motion to dismiss stage that the two-year statute of limitations had run before Jump filed its complaint on June 25, 2014." [*Id.* at 5.] The case was remanded to this Court so that Plaintiff "be allowed an opportunity to file an amended complaint because it is not certain that Jump 'can prove no set of facts that could establish the timeliness of the claim[s].'" [*Id.* at 5] (citation omitted). Since the complaint has been amended with additional averments, Defendants are not barred from raising a statute of limitations argument. However, to the extent that Defendants rely on facts previously determined by the Court of Appeals insufficient to conclusively establish when Plaintiff first sustained damages[3], the Court will defer to the Ninth Circuit's judgment.

The gravamen of this lawsuit continues to be that Defendants allegedly failed to correctly execute their professional obligations as land use and zoning consultants, therefore "[Plaintiff's] cause of action, regardless of appellation, amount to a claim of professional negligence." *Hydro-Mill Co., Inc. v. Hayward Tilton and Rolapp Ins. Assocs., Inc.*, 115 Cal. App. 4th 1145, 1159 (Cal. Ct. App. 2004). Neither party disputes that the two year statute of limitations applies.[4]

As the Court's earlier order explained "[g]enerally speaking, a cause of action accrues at the time when the cause of action is complete with all of its elements." *E-Fab, Inc. v. Accountants, Inc. Servs.,* 153 Cal. App. 4th 1308, 1317 (Cal. Ct. Ap. 2007) (internal quotations omitted). However, "[t]he discovery rule postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Id.* at 1318. This means that Plaintiff's claim for "professional negligence does not accrue until the plaintiff (1) sustains damage and (2) discovers, or should discover, the negligence." *Roger*

---

[3] The Appellate Court found that the lease, delay in opening, and fee associated with the CUP application, and professional fees incurred in conjunction with the CUP were not facts that conclusively established when Plaintiff first sustained damages.

[4] Because this Court's jurisdiction rests on diversity of citizenship and all of Plaintiff's claims are under California law, California's statute of limitations law applies here. *See Bancorp Leasing & Fin. Corp. v. Agusta Aviation Corp*., 813 F.2d 272, 274 (9th Cir. 1987) ("in a federal diversity action brought under state law, the state statute of limitations controls.").

*E. Smith, Inc. v. SHN Consulting Eng'rs & Geologists, Inc.*, 89 Cal. App. 4th 638, 650-51 (Cal. Ct. App. 2001).

Here, Plaintiff had discovered all of the elements of Kruger's alleged negligence, except damages, by the time Plaintiff signed the CUP application on June 19, 2012. Therefore, the focus of the Court's inquiry is whether the FAC sufficiently alleges when Plaintiff first sustained damages. In so doing, the Court is mindful of the Court of Appeals finding that the allegations in the complaint related to the lease payments, lost profits associated with delay, expenses incurred in conjunction with the CUP, and the June 20, 2012 payment associated with the CUP, did not conclusively establish when Plaintiff first sustained damage.

Unlike the original complaint the FAC specifically avers that before filing the CUP application "Plaintiff was aware that the land-use advice was incorrect at this point, Plaintiff was not aware that the Defendants' land-use advice had caused Plaintiff any damage. Plaintiff first needed to determine what the City would require." [Doc. No. 22 at 5:15-18.] Further, the FAC alleges that:

> Plaintiff was not aware it was damaged by the Defendants' erroneous advice, until, at the earliest, Plaintiff's receipt of the cycles report from the City of San Diego, which was received in the Fall of 2012. At this time it became apparent that Plaintiff would be forced to incur significant construction and developmental costs above and beyond the improvements it already intended to undertake. Because of Plaintiff's substantial planned investment into the Property, Plaintiff could not calculate whether it had been damaged by Defendants' erroneous advice until the City of San Diego provided the cycles report after submission of the CUP application, and ultimately its recommendations for the project in a draft CUP, culminating in an approved CUP on January 17, 2013.

[*Id.* at ¶ 21.]

Defendants argue that Plaintiff's assertions regarding when it became aware that it had suffered damage are contradicted by controlling facts that conclusively establish that Plaintiff learned of the harm prior to June 25, 2012. In sum, Defendants assert that Plaintiff

was damaged through the delay, the initial CUP expenses, and by entering into the lease based on false advice.

In support of its position, Defendants point to the fact the Plaintiff applied for a CUP with the City on June 19, 2012 and paid an $8,618.00 deposit and close out fee to the City on June 20, 2012.  Defendants argue that "Plaintiff's reliance on the later determination of the ultimate cost of the CUP process is a red-herring – again, the ultimate extent of damage is not what is at issue when this Court looks to whether Plaintiff was aware of the fact of any damage (including the delay itself)."  [Doc. No. 25-1 at 11:19-23.]  But, the Court of Appeals directly addressed whether the June 20 payment conclusively established that Plaintiff had sustained damage on June 20, 2012, finding that "it is not certain that the June 20, 2102 payment put Jump on notice that its total start-up costs would exceed the total Jump anticipated."  [Doc. No. 16 at 4.]  What is more, the FAC now specifically addresses the CUP process and alleges that upon commencing it, "Plaintiff was also informed that Plaintiff may not be required to pay any additional costs related to the zoning variance over and above what Plaintiff anticipated to pay in construction and development costs. . . . According to professionals advising Plaintiff, the City of San Diego could authorize the Conditional Use Permit, while only requiring Plaintiff to undertake construction and improvements Plaintiff intended to do anyway."  [Doc. No. 22 at ¶ 17.]  Additionally, the FAC also claims that the June 20, 2012 payment to the City "was subject to refund" and therefore "there was not necessarily an immediate, tangible effect" on its financial affairs and likens it to a security deposit that "could be drawn on by the City upon the occurrence of certain events, whether that be an ultimate CUP or a building permit."  [Id at ¶ 22.]

Next, Defendants point to the CUP process itself, and the delay and expense associated with it, as evidence that Plaintiff knew it was damaged by June 19, 2012.  Defendants posit that by having to go through the CUP process Plaintiff was necessarily damaged because, if Defendants purported advice was correct, the whole administrative process would have been avoided.  While it seems to this Court that having to go through an unplanned permitting process would undoubtedly cause a postponement in the opening

of Plaintiff's business and generate additional expenses not previously planned for thereby putting Plaintiff on notice that it was damaged, the Appeals Court found differently.

In addressing whether the delay conclusively established the date of damage, the Ninth Circuit explained "we cannot determine from the complaint when Jump intended to open its facility and so cannot determine when Jump began to accrue damages in the form of lost profits." [Doc. No. 16 at 4.] Although the FAC is still silent regarding when Plaintiff intended to open its facility, it now affirmatively asserts that "Plaintiff was not aware of the length of delay until after receipt of the cycles report." [Doc. No. 22 at ¶ 23.] As to the expenses associated with the CUP process the Court of Appeals found that "although Jump's complaint asserted that Jump also incurred professional fees in conjunction with the CUP, it does not establish whether those expenses were incurred before the CUP application was filed or after the City responded to the application." [Doc. No. 16 at 4.] In the same vein as the delay allegation, the FAC now specifically avers that it was only upon receipt of the cycles report that Plaintiff was required to "prepare draft permit findings, meet with City staffers and go through the CUP hearing process with the Planning Commission, which involved costs associated with attorneys and consultants, all of which were incurred after July 2, 2012." [Doc. No. 22 at ¶ 20.]

Finally, Defendants assert that Plaintiff's own averments regarding the lease establish that Plaintiff knew it was damaged prior to submitting the CUP application because by that time it was aware that the purported land use advice was incorrect and but for Defendants' erroneous advice, it would not have executed the very costly Lease. Specifically, Defendants contend that the "application represents the latest date that Plaintiff was at least aware that it had taken detrimental, costly actions in reliance on purported advice that no additional permits were necessary." [Doc. No. 25-1 at 12:17-20.] But, the Ninth Circuit addressed whether the lease payments established when Plaintiff first sustained damage concluding "because the lease payments were part of the bargain Jump struck with the lessor, the lease payments cannot be claimed as damage proximately caused by Kruger's alleged professional negligence." [Doc. No. 16 at 4.]

In short, Defendants point to no other facts, other than those previously considered by the Court of Appeals that Plaintiff knew it had been caused harm prior to June 25, 2012. Additionally, for purposes of this motion to dismiss the Court accepts as true the factual allegations that Plaintiff did not know it had sustained damage until the Fall of 2012. Accordingly, the Court cannot conclude at the motion to dismiss stage that Plaintiff's claims are time-barred.

### B. Failure to Allege the Elements of the Claims

Defendants also argue that Plaintiff fails to plead the elements of each cause of action and that the complaint offers nothing more than a formulaic recitation of the elements of a cause of action.

#### 1. Negligence

The elements of a cause of action for negligence are: "(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. Cnty. of San Mateo*, 12 Cal. 4th 913, 917 (1996). Under California law, "a person may not ordinarily recover in tort for breaches of duties that merely restate contractual obligations." *Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000) (superseded by statute on another ground as stated in *Rosen v. State Farm General Ins. Co.*, 30 Cal. 4th 1070, 1079-1080 (2000)). "[C]onduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law." *Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999) (internal citations omitted).

But, California courts, in cases decided subsequent to Aas and [Erlich] "continue to apply a rule that negligent failure to exercise reasonable care and skill in undertaking to perform a professional services contract is a tort as well as a breach of contract." *City and Cnty. of S. F. v. Cambridge Integrated Servs. Grp., Inc.,* No. C 04-1523 VRW, 2007 WL 1970092, at *4 (N.D. Cal. July 2, 2007) (discussing California cases). *See also Land O'Lakes v. Dairyamerica, Inc.,* No. 1:15-Ccv-01937-DAD-MJS, 2017 WL 495644, at * 3 (E.D. Cal. Feb 6, 2017) ("While the California Supreme Court has not explicitly addressed

the issue of professional services contracts as opposed to services contracts in general, the California Court of Appeals has construed professional services contracts as also giving rise to independent tort duties.") (collecting cases).

When applying California law federal courts within this circuit have found that a breach of a professional services contract gives rise to a cognizable tort claim. *See Id.* at *4 (denying motion to dismiss professional negligence claim, finding defendants argument "unconvincing in light of the numerous federal and California court decisions . . . indicating to the contrary.); *Corelogic, Inc. v. Zurich Am. Ins. Co.*, No. 15-cv-03081-RS, 2016 WL 4698902, at *5 (N.D. Cal. Sept. 8, 2016) (denying a motion to dismiss a negligence claim based on a breach of contract, noting that Plaintiff's alleged that "defendants negligently performed an attendant professional service.); *Architectural Resources Grp., Inc. v. HKS, Inc.*, No. C 12-5787 SI, 2013 WL 568921, at *4-5 (N.D. Cal. Feb 13, 2013) (denying a motion to dismiss a tort claim based on breach of a services contract, because plaintiff "has alleged the elements of a professional negligence claim."); *Music Grp. Macao Commercial Offshore Ltd. v. Foote,* No. 14-cv-03078, 2015 WL 3882448, at 16 (N.D. Cal. June 23, 2015) ("It has been recognized that an action for professional negligence constitutes both a tort and a breach of contract").[5]

Defendants move to dismiss Plaintiff's negligence claim for failure to identify a duty owed by defendants independent of the parties' alleged contract.  However, the FAC alleges a professional negligence claim in that "Defendants owed Plaintiff a duty of care to perform the professional services contract with the reasonable care, skill and knowledge of similar professionals; in this instance, to provide land-use consultancy advice regarding the appropriateness of the Property for Plaintiff's indoor trampoline business prior to the

---

[5] *See also Barrett v. JP Morgan Chase Bank,* Case NO. 14CV2976 DMS (WVG), 2016 WL 3523046, at *3 (S.D. Cal. June 27, 2016) (quoting *Flowers v. Torrance Memorial Hosp. Med. Ctr.*, 8 Cal 4th 992, 997-98 (1994) ("due to professionals' training and skills in a given field, they are required to act with ordinary prudence under the circumstances as measured by 'the knowledge, skill and care ordinarily possessed and employed by members of the profession in good standing . . . .'") (internal citation omitted.)

execution of the Lease."[6]   [Doc. No. 22 at ¶ 27.]   These allegations of professional negligence are sufficiently to plead an independent tort law duty and support a negligence cause of action.   *See Cambridge Integrated,* 2007 WL 1970092, at \*3-5 (observing that California courts "continue to apply a rule that negligent failure to exercise reasonable care and skill in undertaking to perform a professional services contract is a tort as well as a breach of contract.").   Accordingly, the Court **DENIES** Defendants' motion to dismiss the negligence claim.

### 2.   Breach of Contract

"A breach of contract claim under California law requires the plaintiff to establish four elements: (1) the existence of a contract; (2) plaintiff's performance of excuse for nonperformance of the contract; (3) defendant's breach of the contract; and (4) damages resulting from defendant's breach of the contract.   *McAdam v. State Nat. Ins. Co., Inc.*, 28 F. Supp. 3d 1110, 1116 (S.D. Cal. 2014).

Defendants offer the same arguments in favor of dismissal of the breach of contract claim they made in their earlier motion to dismiss.   As previously explained, the Court remains "unaware of any binding federal authority requiring dismissal of a breach of contract claim solely for failure to allege the form of contract simply because California's procedural rule allow a demurrer on such ground."   [Doc. No. 10 at 16:24-17:1.]

Moreover, the Court finds that the complaint adequately alleges the elements of a breach of oral or implied contract claim sufficient to survive the motion to dismiss. Accordingly, Defendants' motion to dismiss the breach of contract claim is **DENIED**.

///

///

---

[6] In support, Plaintiff relies on *Moreno v. Sanchez*, 106 Cal. App. 4th 1415 (2003) for the proposition that "negligent failure to exercise reasonable care and skill in undertaking to perform a professional services contract is a tort as well as a breach of contract."  [Doc. No. 22 ¶ 25]  In *Moreno,* the court looked at the duties owed by a housing inspector and found that "under common law the established rule is the negligent failure to exercise reasonable care and skill in undertaking to perform a service contract of this type is a tort, as well as a breach of contract."  *Moreno,* 106 Cal. App. 4th at 1435.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VI.    Conclusion**

For the reasons discussed above Defendants' motion to dismiss the complaint pursuant to Rules 8[7] and 12(b)(6) of the Federal Rules of Civil Procedure is **DENIED.**

Defendants shall file an answer to the FAC on or before **March 28, 2017**.  The parties are directed to contact the chambers of Magistrate Judge Major to request a Case Management Conference/Early Neutral Evaluation Conference be scheduled as soon as possible.

It is **SO ORDERED**.

Dated:  March 21, 2017

_____
Hon. Cathy Ann Bencivengo
United States District Judge

---

[7] While the face of Defendants' motion references Federal Rule of Civil Procedure 9(B) the substance of the motion only discusses Rules 8 and 12.

13